THOMAS H. GARDINER *vs.*
THOMAS A. KENNELLY, *Public Utility Adm'r.*

MAY 28, 1952.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

BAKER, J. This appeal was taken under the provisions of public laws 1949, chapter 2174, sec. 31, by a telephone subscriber, hereinafter called the appellant, from an order of the public utility administrator, referred to herein as the administrator, permitting the New England Telephone & Telegraph Company, termed the company, to place into effect a certain schedule of rates and charges.

In this court, motions to dismiss the appeal were filed respectively by the company and by the administrator. These motions are based on several grounds, among them being the claim that appellant is not a proper person to prosecute the appeal and that the petition filed by him under the pertinent statute is not in correct form. The appellant is prosecuting this appeal in his individual capacity. He was not a named party in the proceeding at the hearings before the administrator but at that time acted as solicitor for the town of South Kingstown.

In support of the motions to dismiss, it is argued that he is not an aggrieved person within the meaning of sec. 31 *supra*, which reads in part as follows: "Any person or persons aggrieved by an order of the public utility administra-

tor fixing any rate * * * may appeal to the supreme court for a reversal of such order on the ground that the * * * rates, fixed in the order are unlawful or unreasonable." The cases of *Gannon* v. *Doyle,* 16 R. I. 726, *Tillinghast* v. *Brown University,* 24 R. I. 179, and *Interstate Transit Corp.* v. *Division of Public Utilities,* 57 R. I. 160, are cited as upholding that view.

Upon consideration we are of the opinion that the above cases do not support the contentions of the administrator and the company in the present circumstances. It is true that in each of such cases the statutes, under which appeals to this court were prosecuted, in form were substantially similar to sec. 31, *supra,* upon which the appellant relies to support the instant appeal. In the cited cases, however, the court pointed out the proper meaning to be given the term "aggrieved" when used in such appellate statutes. For example, in the *Gannon* case, which was a probate appeal, the court said at page 727: "We think, however, that in contemplation of law, a person cannot be deemed to be aggrieved by a judgment in a proceeding in which he is not interested." In dismissing the appeal in the *Interstate Transit Corp.* case, the court held that the appellant had no direct personal interest in the issue being passed upon. And in the *Tillinghast* case, also a probate appeal, the court stated at page 183: "The rule generally adopted in construing statutes on this subject is that a party is aggrieved by the judgment or decree when it operates on his rights of property or bears directly upon his interest. * * * The word 'aggrieved' refers to a substantial grievance, a denial of some personal or property right or the imposition upon a party of a burden or obligation."

In our judgment the appellant comes within the definition of an aggrieved person as set out in the *Tillinghast* case. The increasing of telephone rates, when applied to him personally and to the facts which he alleges, imposes upon him an added financial burden or obligation, bears directly upon his personal interests, and reasonably considered from

his point of view constitutes a substantial grievance. See *Attleboro Steam & Electric Co.* v. *Public Utilities Comm'n,* 46 R. I. 496. We find that in the circumstances the appellant may properly prosecute this appeal.

We are also of the opinion that the contentions of the company and the administrator that the appeal should be dismissed because appellant has not exhausted his administrative remedies and because his appeal is defective in form are without merit. The general rule as to the exhaustion of such remedies by a party in the ordinary case is well recognized, but in our judgment under the present facts it has no application in the case at bar. Further, while the form of the instant appeal leaves much to be desired and is to some extent vague and ambiguous, it is our opinion that the grounds relied on are sufficiently discernible and we should not dismiss it for such reasons alone. We conclude therefore that the motions of the company and of the administrator to dismiss the appeal should be denied.

As we view the appeal it raises only a question of procedure and the merits of the controversy in respect to the fixing of rates are not before us in the circumstances. The record shows that many times in the last several years the company has been before the administrator and the courts of this state for the purpose of obtaining increases in its rates and charges. Concerning the instant appeal it appears that on November 15, 1950 the company filed its petition with the administrator under G. L. 1938, chap. 122, §41, asking that it be permitted to *temporarily* alter, amend or suspend its existing schedule of rates and charges for telephone service.

It alleged in general that it had experienced substantial increases in costs above those contemplated by the public utility hearing board when it previously had allowed the company to raise its rates and charges; that such added costs were due to subsequent increased levels of wages paid to its employees, federal income taxes, social security taxes, and other larger operating expenses amounting in all to

approximately $850,000 a year; and that in the circumstances an *emergency* existed whereby an increase in rates was necessary in order to prevent further injury to its business and the interests of the people. The company therefore requested that it be permitted to *temporarily* alter, amend or suspend existing rates and schedules and that it be authorized by the administrator to put into effect a schedule which would produce approximately $850,000 additional revenue over that previously allowed. Attached to the petition and filed therewith was an abbreviated and incomplete schedule containing certain revisions of its then existing tariff, which revisions provided for increased charges for main telephone exchange service, message unit rates, and miscellaneous services, all designed to produce the additional annual revenue requested.

After notice, public hearings on the above petition were held by the administrator in January 1951 and evidence and exhibits in its support were presented by the company. No other evidence was submitted, although appearances were entered for several towns, which were represented at the hearings, as was the general public by a duly appointed attorney. At the close thereof the attorney for the company in his argument to the administrator moved "that in the event that you determine that there is no emergency shown in those proceedings, that you grant permission under Section 45 on less than one day's notice, and for good cause shown, as indicated in the evidence before you now in this proceeding, that we be permitted to file, effective immediately, the changes suggested in the petition currently before you."

That section is set out in P. L. 1949, chap. 2172, and is in amendment of G. L. 1938, chap. 122, §45, as previously amended. Section 45 as thus finally amended has provisions relating to the manner and form in which public utilities shall file schedules of their rates and charges; to notice of changes in such rates; to the holdings of public hearings

thereon; to the suspension of rates by the administrator; and to other matters of a kindred nature.

On July 27, 1951 the administrator filed his decision and made an order on the petition and evidence before him. In substance he found that the company had not shown that an emergency existed in its affairs and that it would save needless expense to all parties and would be in the public interest to pass on the evidence of record before him, since the company contended that the primary reason for the filing of its instant petition was the fact that the unexpected and added expenses above referred to prevented a 6 per cent return on its property in this state to which it was entitled under the decision of the public utility hearing board. Accordingly he held that the company was entitled to revise its rates and charges in a manner which would produce additional revenue in the amount of $850,000 annually. His order was "That the New England Telephone and Telegraph Company be and the same is hereby permitted to place into effect on five days' notice to the Administrator and to the public the schedule of rates and charges attached to the petition as filed on November 15, 1950 * * *."

Section 31, *supra,* under which the appellant here is prosecuting his appeal from the above order limits the scope of such an appeal to the grounds "that the rate, toll, charge, joint rate and/or joint rates, fixed in the order are unlawful or unreasonable." It is appellant's contention that the order made by the administrator is unlawful and unreasonable because it was not supported by the evidence; that the administrator, having found that no emergency existed, should have denied the company's petition; and that in the circumstances he was without jurisdiction under §45 to put into effect the added rates as filed.

Speaking generally, a consideration of G. L. 1938, chap. 122, and the amendments thereto shows an intent on the part of the legislature to give the administrator, as successor to the division of public utilities, discretion and broad powers, subject to proper judicial review, in passing upon

and fixing the rates which a public utility company may be permitted to charge the public for its services. Further §53 of such chapter states among other things that the provisions of the chapter shall be construed liberally in order to accomplish its purposes. The following sentences also appear in that section:

> "The division shall have, in addition to the powers in this chapter specified, mentioned and indicated all additional, implied and incidental power which may be proper and necessary to effect and carry out, perform and execute all the said powers herein specified, mentioned and indicated. A substantial compliance with the requirements of this chapter shall be sufficient to give effect to all the rules, orders, acts and regulations of the division, and they shall not be declared inoperative, illegal, or void for any omission of a technical nature in respect thereto."

It is not questioned that the company's petition was filed under §41, *supra,* and asked only that it be allowed to *temporarily* alter, amend or suspend the existing schedule of rates and charges for its service because of an emergency in the affairs of the company. The administrator, however, found on the evidence that the existence of an emergency had not been established. In the circumstances we are of the opinion that he was in error in then granting the company's motion, made at the conclusion of the hearing, that if he determined no emergency had been shown he could give permission to the company under section 45 to file, effective immediately, the rate changes set out in the petition. The only petition on which notice was given was filed under §41. In our judgment on his findings he should have denied the company's motion and dismissed its petition. In substance his decision and the order entered thereunder transformed a petition for certain new rates, filed under the section of the statute dealing with the granting of *temporary emergency* relief, into a petition in effect asking for added rates to be established as *permanent* relief under another section of the statute.

We recognize that §53, *supra,* provides that the chapter in question should be construed liberally in order to accomplish its purpose. We also appreciate the position taken by the administrator that in the public interest further expense would be saved if he should pass on the evidence before him and determine the question raised thereby. However, in our opinion the statute though liberally construed does not contemplate that a short cut be taken in prescribed orderly procedure even if the purpose of so doing is laudable.

Objections to the procedure adopted by the administrator in the circumstances are not merely of a technical nature. Indeed the schedule of rates and charges filed with the company's petition was not such as should be, and ordinarily is, filed by a petitioner seeking additional rates and charges of a permanent nature. It was not sufficiently comprehensive, and little or no detailed information was furnished as a basis from which permanent rates in accordance with the statute and findings could properly be established.

Furthermore a serious question is raised in respect to the matter of notice. It could well happen that a notice issued by the administrator for hearings on a petition involving only a *temporary* increase or change in rates based on some emergency would not be of concern to many interested persons. On the other hand such a notice might be of great importance to them if the petitioning company was asking for a *permanent* increase in its rates and charges apart from any emergency. Under the procedure followed in the present instance, whereby the company's petition for increased temporary rates was, on its motion and without appropriate notice, considered as one for a permanent change in rates, an interested person entitled to a notice and hearing on the question of a permanent change might well be deprived of one.

In the circumstances appearing herein it is our opinion that the appellant has shown that the order of the administrator putting into effect the additional rates of the company, as set out in the schedule, so called, filed with its

petition, was made without proper notice and therefore is unlawful.

The appeal is sustained, the order of the administrator appealed from is reversed, and the papers in the case are ordered sent back to the respondent administrator with our decision endorsed thereon.

## ON MOTION FOR REARGUMENT.
### JUNE 27, 1952.

PER CURIAM. After our opinion in the above case was filed the New England Telephone and Telegraph Company, an appellee therein, by leave of court filed a motion for reargument.

After carefully considering such motion and the reasons assigned therefor, it is our judgment that in the circumstances we need refer to one matter only. In support of its contentions, the company construes the final proviso in public laws 1949, chapter 2172, section 1, amending general laws 1938, chap. 122, §45, as amended, as giving the public utility administrator very broad and almost unlimited powers in administering thereunder the changing of rates, the filing and publishing of tariffs, and the entering of interim orders providing temporary schedules of rates pending investigation.

Undoubtedly it was the legislative intent to give the public utility administrator ample discretionary powers to perform his duties under the law. In our opinion, however, the construction of the proviso urged by the company is too broad and is unnecessary. That proviso does not give the public utility administrator power to act upon a fixing of permanent rates and tariffs entirely at his pleasure without the filing of a proper schedule and without reasonable notice to the public of contemplated changes in such rates. The alleged grant of any such power might raise a serious question as to whether that part of the act was constitutional. It is well recognized that when different constructions of a statute are possible the court will adopt a con-

376

struction which will accord with its constitutionality rather than one which would raise serious question as to its unconstitutionality.

In the circumstances appearing herein the matter of giving an appropriate notice to the public under the statute became of particular importance. Here the company had applied under §41 of the statute only for a *temporary* increase of rates claiming the existence of an emergency in its affairs, and thereafter on mere motion without further notice to the public asked for what amounted to an increase in *permanent* rates in the event that no emergency should be found.

In respect to the status of the rates and charges for telephone service for border-line subscribers, so called, as referred to in the motion for reargument it is clear that such question was not involved in the present appeal and was not decided.

The motion for reargument is denied.

*Thomas H. Gardiner, pro se,* for appellant.

*William E. Powers,* Attorney General, for State.

*Francis J. O'Brien,* Special Counsel.

*Swan, Keeney & Smith, Eugene J. Phillips, Marshall Swan,* for New England Telephone & Telegraph Company.